**Marcus BISHOP, Appellant,**

v.

**George W. KENDRICK, Appellee.**

Court of Appeals of Kentucky.

Dec. 13, 1968.

---

William J. Baird, Baird & Hays, Pikeville, for appellant.

Francis M. Burke, J. A. Runyon, Pikeville, for appellee.

MONTGOMERY, Chief Justice.

This controversy concerns the proceeds of two fire insurance policies. The trial court held that Marcus Bishop should recover $4,200 and George W. Kendrick should recover $4,100. Bishop appeals and contends that he is entitled to the entire proceeds.

Kendrick was the owner of a country store building. In 1947, Bishop took possession of the building as lessee and continued as such until the building and its contents were destroyed by fire on or about July 7, 1962. The lease in effect at that time had been executed on December 1, 1959, for a five-year term, subject to cancellation by either party on thirty days' notice. During his period of occupancy as a tenant, Bishop, at his expense, had added substantial improvements to the building, including a bedroom, feed room, three-room apartment, and shelving, and had made extensive repairs.

On September 19, 1959, Bishop purchased two fire insurance policies in the amount of $4,150 each. Each policy provided coverage of $2,000 on the store and apartment, $550 on the store and office furniture and fixtures, and $1,600 on the household goods and personal property of Bishop. Each policy listed the insured as "Marcus Bishop and George W. Kendrick as their respective interests may appear." The manager of the insurance agency who wrote the policies said that the policies were issued in such manner "to prevent any difficulty * * * in regard to the disposition of the proceeds of the policy. It was a Company request." He also testified that the insurance was written to insure the interests of Bishop in the "improvements and betterments" on the building and was the type commonly written in such situations.

On April 19, 1960, the parties executed a written agreement under which Kendrick assigned to Bishop all of his interest to "any proceeds thereunder arising out of any loss covered by the following listed insurance policies or renewals thereof: 1. Policy No. F 104077 with Transit Casualty Company. 2. Policy No. F-48266 with Pacific Indemnity Company." The stated purpose of the agreement was to reduce to writing the agreement theretofore existing between the parties.

Thereafter, on or about September 19, 1961, both named companies withdrew from writing insurance in Pike County and canceled the policies. Each policy was replaced by a policy written in another company with the same coverage, terms, and conditions of the previous policies. While the new policies were in effect, the loss occurred, and each company settled for the face amount of the policy. Each check was issued to include Bishop and Kendrick as payees. This suit resulted when Kendrick refused to endorse the checks in favor of Bishop as claimed by Bishop under the contract of April 19, 1960.

After hearing testimony, the trial court entered judgment in favor of Bishop for $4,200 and of Kendrick for $4,100. The court concluded that: (1) The contract of April 19, 1960, was unenforceable because it was against public policy; (2) the agreement did not purport to assign the proceeds of the two policies·in effect at the time of the loss; and (3) Bishop's insurable interest in the store and apartment building was limited solely by his right of occupancy which, in this case, the court found to extend to only thirty days. Of the total of $4,000 insurance payable on the loss of the building, the court awarded Bishop only $300. Kendrick had collected $1,200 as the face amount of the coverage on the building under a separate policy. Bishop contends that the court's conclusions of law are erroneous.

■ In view of the decision in Aetna Insurance Company v. Snider, Ky., 437· S.W.2d 180, the court was in error in holding that the value of Bishop's insurable interest in the building should be reduced by reason of the thirty-day right of occupancy period. For discussion of tenant's interest as insurable interest, see Aetna and cases cited therein.

■ The court's conclusion of law that the agreement was an assignment and void as being against public policy is not supported by authority. Kendrick cites cases which are not applicable since they deal with assignments of policies to one having no insurable interest. Here, Bishop had an insurable interest.

■ Acts which have a "mischievous tendency, so as to be injurious to the interests of the state, apart from illegality or immorality" were early classified as being against public policy. Ballard County Bank's Assignee v. United States Fidelity & Guaranty Company, 150 Ky. 236, 150 S.W. 1. See also 17 Am.Jur.2d, Contracts, Section 174, page 532. The policies were written with both parties as insureds for the convenience of the insurance companies and at the suggestion of the insurance

agent who knew that the policies were for the benefit of Bishop. He had paid the premiums on all of the policies involved. The subsequent agreement between the parties was to permit Bishop to receive the benefit of the insurance carried by him. There is no suggestion of overinsurance. Under the circumstances here, the agreement is not in violation of public policy.

■ Likewise under these circumstances, the policies in force at the time of the loss are deemed the same as renewals of the policies named in the agreement, the only difference being the named companies and policy numbers. In contemplation of the contract between the parties, the later policies are properly considered as renewals and governed by the contract. Bishop was entitled to the full amount payable under both contracts.

Judgment reversed.

All concur.