THIRD ESTABLISHMENT, INC., Plaintiff-Appellee and Cross-Appellant, *v.* 1931 NORTH PARK APARTMENTS *et al.*, Defendants-Appellants and Cross-Appellees.

First District (4th Division)    No. 79-2223

Opinion filed February 5, 1981.

Block, Levy & Becker, Chartered, of Chicago (Alvin R. Becker, of counsel), for appellants.

Emil Shafran, of Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The issue in this case is whether the lessor or its lessee has the right to insurance proceeds on contents owned by the tenant after a fire damaged or destroyed the contents. The trial court granted summary judgment for the lessee holding that the lessor had no claim to the proceeds. It also denied the lessee's claim for attorney's fees. Both parties appealed.

We affirm.

The pleadings and other items introduced into evidence disclose the following:

The defendant, 1931 North Park Apartments (hereinafter called North Park), through its predecessor in interest leased certain real property located at 1944 North Clark Street in Chicago to Prestige Restaurant. Prestige assigned its interest in the leasehold to Le Pub, Inc., with the consent of North Park. AM Foods, Inc. (hereinafter AM), the nominal defendant, is the successor in interest to Le Pub, Inc. Le Pub, Inc., then subleased the property to the plaintiff, Third Establishment, Inc. (hereinafter called Third Establishment). Third Establishment alleged in its complaint that at no time prior or subsequent to the execution of the lease between North Park and Prestige (hereinafter called the top lease) did North Park ever lease, transfer, own or place any tangible property in the demised premises, but that all of the tangible personal property therein was owned by Third Establishment or AM. North Park admitted this allegation. Third Establishment further alleged that the trade fixtures were placed upon the premises by Third Establishment and AM and that North Park did not pay or contribute for said improvements or betterments and had no ownership or other interest therein. North Park denied this claim in that it claimed a right to the insurance proceeds on the fixtures. It did not at any time, in a verified or unverified pleading, allege or suggest that it owned the fixtures prior to their destruction. In his

affidavit Daniel E. Reilly, president of Third Establishment, reiterated the statement that North Park placed no personal property on the premises. He also stated that Third Establishment paid personal property taxes on the property contained within the premises and claimed depreciation expense on its corporate income tax return for that property owned by it. Anthony DeRosa, an officer of AM, in his affidavit also stated that North Park at no time placed personal property in the premises but that all the property contained therein was the property of AM and/or Third Establishment.

The top lease consisted of two portions, a form lease, parts of which had been stricken out, and a 14-page rider. A typed proviso in the form lease stated that in case of any inconsistency or ambiguity between the provisions of the rider and the provisions of the printed lease, the provisions of the rider would control. Among the provisions of the form lease were the following:

"9. CONDITION OF THE PREMISES: Lessee has examined the premises before signing this lease and is satisfied with the condition thereof, excepting only such alteration, improvements, repairs, decorating and cleaning, if any, which are specifically provided for herein. Lessee's taking possession shall be conclusive evidence as against Lessee that the premises were in good order and satisfactory condition when Lessee took possession hereunder. No promise of Lessor to alter, remodel, improve, repair, decorate or clean the premises or any part thereof, and no representation respecting the condition of the premises or the Building, has been made by Lessor to Lessee, unless the same is contained herein or made a part hereof. At the termination of this lease by lapse of time or otherwise, Lessee shall return the premises and all equipment and fixtures therein in as good condition as when Lessee took possession, ordinary wear and tear excepted, failing which Lessor may restore the premises, equipment and fixtures to such condition and Lessee shall pay the cost thereof upon request.

10. ALTERATIONS: * * *
All additions, hardware, non-trade fixtures and all improvements, temporary or permanent, in or upon the premises, whether placed there by Lessee or by Lessor, shall, unless Lessor requests their removal, become Lessor's property and shall remain upon the premises at the termination of this lease by lapse of time or otherwise without compensation or allowance or credit to Lessee. If, upon Lessor's request, Lessee does not remove said additions, hardware, non-trade fixtures and improvements, Lessor may remove the same and the Lessee shall pay the cost of such removal to

Lessor upon demand. If Lessee does not remove Lessee's furniture, floor coverings, trade fixtures and other personal property of all kinds from the premises prior to the end of the term, however ended, Lessee shall be conclusively presumed to have conveyed the same to Lessor under this lease as a bill of sale without further payment or credit by Lessor to Lessee."

The rider contained the following relevant provisions:

## "SECTION 9

Lessee shall furnish to Lessor and keep in full force and effect at all times during the term of this Lease, one or more policies of insurance issued by responsible insurance companies insuring the Lessor and the Premises against claims, damages and liens by reason of the sale or giving away on or from the Premises of any fermented alcoholic or other spirituous beverages, * * *.

    (a) Bodily injury: * * *

    (b) Injury to means of support: * * *

    (c) Injury to property: * * *

LESSEE shall also keep the Lessor insured in responsible insurance companies against the following risks:

    (a) Loss or damage by breakage or otherwise to all plate glass in the Premises; and

    (b) All statutory and common law liability for damages on account of injury, including death, sustained by any person or persons, including the employees of the parties hereto, while within or upon the Premises or about the ways and entrances thereto. * * *

LESSEE shall also carry Workmen's Compensation Insurance.

LESSEE shall also insure the furnishings and fixtures against loss by casualty of any kind.

* * *

## SECTION 11

In the event of substantial damage to or destruction of the demised premises by fire or other casualty, Lessor shall within sixty (60) days of the date of such casualty have the right to elect and shall notify the Lessee in writing of its election, either to (a) terminate this lease as of the date of such casualty, or (b) repair, restore or rehabilitate the said premises, in which latter event this lease shall not terminate but the rent shall, from the date of such casualty, abate in the ratio which the portion of the premises rendered untenantable by such casualty bears to the portion of the premises thereof remaining usable, until the premises shall have been restored to a tenantable condition, provided that the extent of such restoration shall always be limited to the replacing of the premises

to a condition reasonably similar to that existing before the occurrence of such casualty. In the event Lessor shall elect to repair, restore or rehabilitate the said premises, the Lessor shall commence such work within thirty (30) days after the making of the aforesaid election and shall complete such work within a reasonable time thereafter; and upon the failure of Lessor to replace the premises as aforesaid within such reasonable time the Lessee may terminate this lease, subject to reasonable delays caused by adjustment of the insurance, strikes, labor difficulties, or any other cause beyond Lessor's control.

In the event that the premises are damaged or partially destroyed by fire or other casualty, and such damage or destruction is less than substantial damage to or destruction of the demised premises as hereinafter defined, Lessor shall repair, restore or rehabilitate the said premises to a condition reasonably similar to that existing before the occurrence of such casualty * * *."

North Park also relied on certain provisions of the sublease between Le Pub as lessor and Third Establishment as lessee, to which North Park was not a party. The provisions of the sublease to which it referred are: article III, section 4 which provided that upon substantial damage by fire or other cause the proceeds of any insurance policy provided for by the sublease should be paid to the lessor of the sublease (Le Pub of which AM is the successor), the lessee of the sublease (Third Establishment) waiving any claim that it might have; article IV, section 4 which provided that lessee agreed to keep premises including personal property in good repair, loss by fire excepted; article VII, section 4 which provided that lessee would maintain fire insurance on personal property or equipment leased under the sublease and such other insurance as for the protection "of itself and/or lessor and/or the owner, as the lessor may from time to time reasonably require"; article VII, section 5 which provided that the lessee should maintain for the benefit of the lessor and the lessee, as their respective interests may appear and the lessor may direct, fire insurance with extended coverage upon the leasehold improvements; and article XVI, section 2 which provided that the top lease was incorporated into the sublease and should govern in case of conflict.

Third Establishment obtained a policy from the Illinois Fair Plan insuring Third Establishment, North Park, Le Pub, and AM. The policy insured contents including improvements and betterments. Tenant's improvements and betterments were defined as "the named insured's use in fixtures, alterations, installations or additions comprising a part of the buildings occupied but not owned by the named insured and made or acquired at the expense of the named insured exclusive of rent paid by the

named insured but which are not legally subject to removal by the named insured."

The fire on the premises damaged the tangible personal property and the trade fixtures which, as North Park admitted, were placed on the premises by Third Establishment and AM. Shortly after the fire North Park terminated the lease as it was entitled to do under section 11 of the rider. Third Establishment and Le Pub made a claim upon the Fair Plan and signed the proof of loss required by the policy. North Park did not sign the proof of loss. North Park did not, according to its own affidavit, "make a claim for the personal property and improvements and betterments with reference to the contents in Le Pub Restaurant for the reason that it had no right to do so and depended upon the plaintiff to do so on behalf of said defendant." North Park did recover from its own insurer for the cost of removing the debris and concedes that it has no claim for such costs as against Third Establishment. The Illinois Fair Plan paid $131,828.96 for the contents loss by a check made payable to both parties and is willing to pay $15,889.72 for the trade fixtures insured as improvements and betterments. In its answer, North Park claimed a right to all of the funds on the basis that:

1. North Park had been assigned all of the interest and any and all insurance wherein the plaintiff may have had any right to the same. North Park cited no facts to support this conclusion.

2. Paragraph 10 of the lease provided that lessee should return the premises, equipment and fixtures in as good a condition as when lessee took possession.

3. Under the lease all additions and alterations became the property of the lessor.

4. The lessee was conclusively presumed to have conveyed its fixtures, floor coverings, trade fixtures and other personal property since it did not remove them prior to the end of the lease.

5. The lease required the lessee to carry insurance as to furniture and fixtures.

6. Third Establishment's policy was not one that covered contents including improvements and betterments.

As already stated, the trial court determined that Third Establishment and AM were entitled to the proceeds of the Fair Plan Policy to the exclusion of North Park but denied Third Establishment's claim for attorney's fees.

I.

It appears from its brief that North Park does not contend that it is entitled to recover on the insurance policy as an insured. Rather it appears that its sole contention is that it is entitled under certain provisions of the

lease, namely section 9 of the rider, paragraphs 9 and 10 of the form lease, and certain provisions of the sublease, to the insurance proceeds recovered by Third Establishment. We do not agree.

Section 9 of the rider required the lessee to insure the contents. This the lessee, through its sublessee, Third Establishment, has done. But although that paragraph required the lessee to keep the lessor insured against tort liability, it did not require the lessee to insure the contents for the benefit of the lessor nor did it provide that the proceeds should be paid to the lessor (as did the sublease). For us to read into the contract a provision assigning the proceeds to the lessor which the parties could have inserted and did not would be improper. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 387 N.E.2d 862; *National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 355 N.E.2d 43; *Whaley v. American National Insurance Co.* (1975), 30 Ill. App. 3d 32, 331 N.E.2d 571.) Furthermore, this construction of the policy is reasonable. The lessor was anxious to be protected against such matters as dramshop liability since it could be held personally liable under the statute. (Ill. Rev. Stat. 1967, ch. 43, par. 135.) Likewise, it wanted to be protected against the breakage of plate glass since that pertained to the premises. However, the contents did not belong to the lessor. If they were destroyed the lessor would suffer no loss from the destruction. But since the lease was a percentage rental lease, that is the amount of the rent was determined in part by the amount of the gross sales, it was a matter of concern to the lessor that the lessee, in the event of fire, be able to resume business promptly. For this reason it was in the lessor's interest to require the lessee to carry contents insurance thus providing the lessee with the necessary funds to replace the contents and resume business.

Paragraph 9 of the form lease is irrelevant. While it provides that the lessee must return all equipment and fixtures in as good condition as when the lessee took possession, there was nothing to return to the lessor since the contents did not belong to the lessor. North Park's argument that it is entitled to the proceeds because the lessee did not return the premises in good repair is without merit for two reasons. That part of paragraph 9 of the form lease was superseded by section 11 of the rider which put the duty to repair in case of fire on the lessor. Secondly, even if the lessee was liable in tort or contract for the damage to the premises, the lessor, being only a general creditor, has no claim on the insurance proceeds. *Lindley v. Orr* (1898), 83 Ill. App. 70; 5A Appleman, Insurance Law & Practice §3341 (1970).

■■ North Park next contends that under paragraph 10 of the form lease the contents became its property since they were not removed at the end of the lease, and that, since the contents belonged to North Park, the insurance proceeds did as well. But the lease did not so provide. Even if

we assume that the furniture and trade fixtures were not removed from the premises by the fire when they were damaged or destroyed, but remained on the premises after termination of the lease, the lease only provided that *those contents* become the property of the lessor. Paragraph 10 of the form lease does not mention insurance proceeds and it is a well-established doctrine of insurance law that property insurance is not insurance on the property itself but on the interest of the person insured and does not run with the property when transferred. (*Lindley v. Orr* (1898), 83 Ill. App. 70; *Welch v. Montgomery* (1949), 201 Okla. 289, 205 P.2d 288; *Page v. Scott* (1978), 263 Ark. 684, 567 S.W.2d 101; 4 Appleman, Insurance Law & Practice §2105 (1969); 5A Appleman, Insurance Law & Practice §3423 (1970).) The parties could have provided for an assignment of the insurance proceeds to the lessor after loss (*Brown v. State Farm Fire & Casualty Corp.* (1975), 33 Ill. App. 3d 889, 338 N.E.2d 427; *Bishop v. Kendrick* (Ky. 1968), 435 S.W.2d 462), but they did not.

Accordingly, it is clear that nothing in the top lease gives North Park any right to the insurance proceeds. The lessor also relies on several provisions of the sublease. But the lessor was not a party to the sublease, and can only be considered to be a third-party beneficiary where expressly mentioned. Thus the provision in the sublease stating that the lessee-sublessor was entitled to the insurance proceeds does not entitle the lessee North Park to recover the proceeds. Likewise, the provisions of the sublease requiring the sublessee to maintain insurance for the benefit of the sublessor and sublessee and the owner of the personal property and equipment as their respective interests may appear did not inure to the benefit of the lessor who was neither the sublessor, sublessee nor owner of the equipment. In any event insurance was obtained which did cover the interest of the lessor.

II.

■■ It is clear, therefore, that the lease gave the lessor North Park no special claim to the insurance proceeds, and if North Park can recover the proceeds at all, it can do so only as an insured under the policy. As already noted, North Park has not contended in its brief that it was entitled to recover as an insured under the policy. Nor has it ever acted as if it believed it had a claim against the insurer. It filed no proof of loss with the insurance company although the filing of proof of loss is a condition precedent to recovery under the policy. (*American Central Insurance Co. v. Birds Building & Loan Association* (1898), 81 Ill. App. 258; *Ebert v. Grain Dealers Mutual Insurance Co.* (1973), 158 Ind. App. 379, 303 N.E.2d 693.) It is not necessary for us to determine whether North Park waived any right to recover under the policy since we find that while under the policy it was one of the named insureds, it was not entitled to recover for the destruction of the contents and trade fixtures since it suffered no loss.

■■ ■ A fire insurance contract is a contract of indemnity (*Honore v. Lamar Fire Insurance Co.* (1869), 51 Ill. 409; *State Farm Fire & Casualty Co. v. Brethren Mutual Insurance Co.* (1978), 39 Md. App. 570, 386 A.2d 1249; *Breshears v. Indiana Lumbermens Mutual Insurance Co.* (1967), 256 Cal. App. 2d 245, 63 Cal. Rptr. 879), and unless the insured has sustained an actual loss, the insurer has no liability. (*Schultz v. Home Insurance Co.* (1917), 205 Ill. App. 297 (abstract); *Wolf v. Home Insurance Co.* (1968), 100 N.J. Super. 27, 241 A.2d 28, *aff'd* (1968), 103 N.J. Super. 357, 247 A.2d 345; *Transportation Equipment Rentals, Inc. v. Oregon Automobile Insurance Co.* (1970), 257 Ore. 288, 478 P.2d 620.) This interest and the right of the insured to recover are fixed as of the time of the loss. (*New Hampshire Insurance Co. v. American Employers Insurance Co.* (1972), 208 Kan. 532, 492 P.2d 1322; *Root v. Republic Insurance Co.* (1978), 82 Mich. App. 446, 266 N.W.2d 842; *Daeris, Inc. v. Hartford Fire Insurance Co.* (1963), 105 N.H. 117, 193 A.2d 886.) On the day the fire occurred North Park had no interest or right to the contents or trade fixtures. It could not have prevented either the lessee or sublessee from removing them from the premises. Since on the date of the fire it had no interest in the contents or trade fixtures, it suffered no loss when they were destroyed. Any interest North Park acquired in the contents and trade fixtures it acquired after and because of the fire. To allow North Park to collect the proceeds where it suffered no loss would be to grant it a windfall not contemplated by the parties at the expense of the lessee and sublessee who insured themselves specifically against the loss of contents and betterments, who suffered their loss and whose right to recover for such loss was not affected by North Park's exercise of its right to terminate the lease after the fire. *Daeris, Inc. v. Hartford Fire Insurance Co.* (1963), 105 N.H. 117, 193 A.2d 886.

### III.

■■ North Park further contends that Third Establishment's motion for summary judgment should be stricken because the affidavits failed to comply with the applicable rules of court. In the trial court North Park did originally object to the affidavits but later withdrew its objection. Accordingly, that objection is waived and cannot be raised here. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *Santschi v. Gorter* (1978), 63 Ill. App. 3d 394, 379 N.E.2d 1383.) Furthermore, the affidavits merely addressed the question of who owned the personal property, and North Park had admitted in its answer that at no time prior to or subsequent to the top lease had it transferred, owned or placed in the demised premises any tangible personal property and that all of the tangible personal property therein was owned by Third Establishment or

AM. Summary judgment was properly granted since even if we ignore the affidavits it is clear from the pleadings and the leases that North Park had no right to the insurance proceeds.

## IV.

Third Establishment has cross-appealed from the trial court's denial of attorney's fees under section 41 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 41.) It is well established in Illinois that absent a statute or contractual agreement, attorney's fees and ordinary expenses and burdens of litigation are not allowable to the successful party. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859; *Dulin, Thienpont, Potthast & Snyder, Ltd. v. Packaging Personified, Inc.* (1980), 89 Ill. App. 3d 647, 411 N.E.2d 1173.) An established corollary rule is that any statute providing for the recovery of such costs must be strictly construed. *Dulin, Thienpont, Potthast & Snyder, Ltd. v. Packaging Personified, Inc.* (1980), 89 Ill. App. 3d 647, 411 N.E.2d 1173; *People v. Kluck* (1979), 70 Ill. App. 3d 582, 388 N.E.2d 918, *appeal denied* (1979), 79 Ill. 2d 615.

Section 41 of the Civil Practice Act provides in part:

> "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee."

This section is penal in nature and thus may be invoked only in cases falling strictly within its terms and each of its requirements; specifically, "allegations and denials made without reasonable cause and found to be untrue" must be proved. (*Dulin, Thienpont, Potthast & Snyder, Ltd. v. Packaging Personified, Inc.* (1980), 89 Ill. App. 3d 647, 411 N.E.2d 1173.) Third Establishment has failed to allege that untrue statements were pleaded by defendant, as required to invoke the sanctions of section 41.

In light of the general public policy favoring access to the courts, as shown by Illinois' refusal to follow the British practice of assessing attorney's fees against any losing party, it seems clear that section 41 should not be construed to permit the awarding of attorney's fees whenever a motion for summary judgment or for judgment on the pleadings is granted. Rather, it appears that the application of section 41 should be limited to cases where a party has abused this right of free access to the courts by pleading untrue statements of fact which the party knew or reasonably should have known were untrue.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.