ATHENA RESTAURANT,
INC., Plaintiff,

v.

SHEFFIELD INSURANCE
COMPANY, Defendant.

No. 87 C 5687.

United States District Court,
N.D. Illinois, E.D.

March 15, 1988.

Martin C. Ashman, Chicago, Ill., for plaintiff.

William J. Schaefle, John F. Brennan, Clausen, Miller, Gorman, Caffrey, & Witous, P.C., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, Athena Restaurant, Inc. ("Athena"), originally filed this action in the Circuit Court of Cook County, Illinois seeking a declaration of the rights and liabilities of the parties under a fire insurance policy. Defendant, Sheffield Insurance Company ("Sheffield"), subsequently removed the action to this Court based on diversity of citizenship. Athena and Sheffield have now filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Neither party has raised a genuine issue of material fact. For the reasons set forth below, Athena's motion for summary judgment is denied and Sheffield's motion for summary judgment is granted.

### I. *Facts*

For the purposes of these motions, the undisputed facts are as follows:

Athena operated a restaurant on leased premises located at 2012 West Irving Park Road, Chicago, Illinois. On August 27, 1985, Athena's business was damaged by fire. At the time of the fire, Sheffield insured Athena, under the terms of policy number SP 1000514 ("the policy"), for loss arising from fire damage. The policy provided coverage for various items, including certain improvements and betterments. It is the coverage for these improvements and betterments which forms the basis for this dispute.

Section VII(B) of the policy contains the provisions relevant to this dispute and sets

forth the basis for establishing the valuation of the improvements and betterments:

> The following bases are established for valuation of property:
>
> B. Tenants' Improvements and Betterments:
>
> 1. If repaired or replaced at the expense of the named insured within a reasonable time after loss, the actual cash value of the damaged or destroyed improvements or betterments.
>
> 2. If not repaired or replaced within a reasonable time after loss, that proportion of the original cost at time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agreement, whether written or oral, in effect at the time of loss bears to the periods from the dates such improvements or betterments were made to the expiration date of the lease.
>
> 3. If repaired or replaced at the expense of others for the use of the named insured, there shall be no liability hereunder.

Shortly after the fire occurred, Sheffield paid Athena a total of $43,524.80 for the losses it sustained. Of this total sum, $18,251.00 represented compensation, under Section VII(B)(2) of the policy, for the unamortized value of the improvements and betterments. At the time this sum was paid to Athena, Athena had not repaired or replaced any improvements or betterments at its own expense within the terms of Section VII(B)(1) of the policy. The remainder of the sum paid to Athena represented payment for business interruption, the actual cash value of the contents owned by Athena, and wreckage and debris. These items are not in dispute.

On December 30, 1985, after Sheffield had paid Athena these sums, Athena entered into an agreement to sell its business in an unrepaired, "as is" condition to a third-party ("the third-party purchaser"). The sale price reflected the depreciated value of the property in its damaged condition. After the sale, the third-party purchaser performed certain repairs to betterments and improvements valued at $13,748.65.

Athena thereafter made a claim with Sheffield for the costs of these post-sale repairs. Sheffield rejected the claim because the betterments and improvements at issue were not repaired or replaced at Athena's expense, but, instead, at the third-party purchaser's expense. This lawsuit followed.

## DISCUSSION

■ At issue is whether Athena is entitled to reimbursement, under section VII(B)(1) of the policy, for the expenses incurred by the third-party purchaser after sale to repair certain betterments and improvements. Athena argues that it is entitled to recover the additional $13,748.65 for post-sale repairs because it incurred the costs for these repairs "at its own expense" by virtue of having sold its business at a "huge discount."[1] Sheffield contends that under the plain language of the policy, repairs made by parties other than the insured give rise to no liability.

In deciding this issue, we apply the law of Illinois.[2] The Illinois Appellate Court recently addressed this issue under circumstances very similar to those in this case. In *Paluszek v. Safeco Insurance Co. of America*, 164 Ill.App.3d 511, 115 Ill.Dec. 154, 517 N.E.2d 565 (1st Dist.1987), the plaintiffs filed suit against their insurer as

---

**1.** We note that Athena's position appears to be curiously inconsistent. Athena has not proposed to return to Sheffield the monies it has already received under Section VII (B)(2) of the policy, which articulates the basis of valuation for coverage in the event the insured does not repair or replace at its own expense within a reasonable time. Yet, Athena claims it is owed additional monies under Section VII (B)(1) of the policy, which articulates the basis of valuation for coverage in the event the insured repairs or replaces at its own expense within a

reasonable time. In effect, Athena simultaneously claims to have repaired and replaced at its own expense within a reasonable time *and* to have not repaired or replaced at its own expense within a reasonable time. In this Court's opinion, these propositions are mutually exclusive.

**2.** Because this is a diversity action, we are required to apply the law of Illinois. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

a result of a dispute over a repair and replacement provision in a homeowners' insurance policy. Plaintiffs' home had been damaged by fire. After conducting an investigation into the cause of the fire, the insurer paid the plaintiffs an amount equal to the actual cash value of the dwelling pursuant to a term in the policy which provided in relevant part: "[T]his company shall not be liable for more than the actual cash value of the damaged property unless and until actual repair or replacement is completed." *Id.* at 515–16, 115 Ill.Dec. at 156–57, 517 N.E.2d at 567–68. After receiving the insurer's check for the actual cash value of the dwelling, but before any repairs were made, the plaintiffs sold their house in an "as is" condition. Plaintiffs subsequently notified the insurer that they wished to recover the cost of certain repairs made after sale by the new owner, a contractor. The insurer declined to reimburse the plaintiffs under the repair and replacement provision of the policy because the plaintiffs had expended no money in repairing the structure. Based upon these facts, the trial court entered summary judgment in favor of the plaintiffs.

On appeal, the Illinois Appellate Court reversed and held that the trial court erred in refusing to grant summary judgment in favor of the insurer. Significantly, notwithstanding the policy's silence on the issue of who was required to make the repairs in order to trigger the insurer's liability, the court concluded that the insurer had no obligation to reimburse the plaintiffs for repairs performed and paid for by a subsequent owner. The court explained that a contrary result would be inconsistent with fundamental tenets of insurance law:

> Plaintiff ... elected to sell the home and is now attempting to collect for repairs she did not make. To make this additional payment for repairs would result in a profit to the insured. If we allowed the insured to profit from her insurance, we would contravene the very fundamentals of insurance law. We believe that the provision requires that *repairs be made by the insured,* this being the only result consistent with the goal of indemnification for actual loss suffered.

> We believe that this case should be governed by fundamental principles of property insurance. Property insurance is not insurance on the property, but rather on the interest of the person insured. *Insurance coverage does not run with the property when transferred.*

*Id.* at 516, 115 Ill.Dec. at 157, 517 N.E.2d at 568 (emphasis supplied). *See generally Third Establishment, Inc. v. 1931 North Park Apartments,* 93 Ill.App.3d 234, 48 Ill.Dec. 765, 417 N.E.2d 167 (1st Dist.1981); *Patterson v. Durand Farmers Mutual Fire Ins. Co.,* 303 Ill.App. 128, 24 N.E.2d 740 (1st Dist.1940).[3]

The facts of this case closely parallel those of *Paluszek.* Here, Athena, before making any repairs or replacements, elected to sell its business in an "as is" condition to a third-party. Then, like the plaintiffs in *Paluszek,* Athena attempted to collect from Sheffield the cost of repairs made by the new owner after sale on the theory that Athena incurred the cost of these repairs "at its own expense" by virtue of having sold its business at a "huge discount." Indeed, the only significant difference between *Paluszek* and this case is the policy language. In *Paluszek,* the policy provision requiring interpretation was, because of its silence, arguably more vague and ambiguous, whereas in this case, the relevant policy provisions are clear and unambiguous. The policy in this case explicitly covers only those costs incurred for repairs or replacements made "at the expense of the named insured" and specifically excludes from coverage costs for repairs

**3.** These fundamental principles are not novel to Illinois law. Other Illinois courts have applied them with equal force in slightly different factual settings. *See Higgonbotham v. American Family Ins. Co.,* 143 Ill.App.3d 398, 97 Ill.Dec. 710, 493 N.E.2d 373 (3d Dist.1986); *National Tea Co. v. Commerce and Industry, Ins. Co.,* 119 Ill.App.3d 195, 74 Ill.Dec. 704, 456 N.E.2d 206 (1st Dist.1983). These cases establish that an insured's *intent* to make repairs is not sufficient to render the insurer liable. Thus, Athena's argument that the third-party purchaser knew that the business was being sold at a "huge discount" and agreed to assign any insurance proceeds arising from the loss to Athena is irrelevant and without merit.

or replacements made "at the expense of others for the use of the named insured."

Nevertheless, Athena argues that the policy is ambiguous, citing a New Jersey case, *Ruter v. Northwestern Fire and Marine Insurance Co.*, 72 N.J.Sup. 467, 178 A.2d 640 (1972) in support of this argument. Athena's reliance on *Ruter*, however, is misplaced. We note that the court in *Paluszek* distinguished the *Ruter* case on its facts. That distinction is equally applicable to this case. Moreover, in construing this policy, we are required, under principles of diversity jurisdiction, to apply Illinois law, rather than New Jersey law.[4]

The Illinois Appellate Court has dispositively addressed this issue in *Paluszek*. We agree with the court's reasoning in *Paluszek* and see no reason to depart from its holding. Consistent with the principles articulated in *Paluszek* and the cases cited therein, we hold that Sheffield fully satisfied its obligation to Athena under the policy with respect to the betterments and improvements when it paid Athena an amount equal to the unamortized value of these improvements and betterments. Athena cannot now collect additional monies for post-sale repairs performed and paid for by the third-party purchaser. To hold that Athena could do so would violate a basic tenet of insurance law: insurance coverage does not run with the property when transferred; rather, it is personal to the insured. *Paluszek*, 164 Ill.App.3d at 516, 115 Ill.Dec. at 157, 517 N.E.2d at 568; *Third Establishment*, 93 Ill.App.3d at 241, 48 Ill.Dec. at 771, 417 N.E.2d at 173. Such a result would also allow Athena, as an insured, to unfairly reap a windfall.

Athena could have avoided the current predicament by making the necessary repairs within a reasonable time after the fire occurred, but *before* selling the business. In that fashion, Athena not only could have collected for the actual cash value of improvements and betterments under Section VII(B)(1) of the policy, but also could have sold the business at a conceivably higher purchase price. That Athena elected not to follow this course of action and now regrets it cannot be rectified by this Court, for it is not this Court's function to reform the economic decisions of the parties after the fact. Accordingly, we enter summary judgment in favor of Sheffield.

## CONCLUSION

For the reasons set forth in this opinion, this Court denies plaintiff's motion for summary judgment and enters summary judgment in favor of defendant, Sheffield Insurance Company, in accordance with Rule 56 of the Federal Rules of Civil Procedure.

---

**4.** Athena's position would require this Court to "expand" Illinois law by engrafting law from other jurisdictions. To do so would be an inappropriate exercise of diversity jurisdiction. *See Gust K. Newberg Const. Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1368 n. 7 (7th Cir.1987).