570 So.2d 311 (1990)
CLASSIC CONCEPTS, INC., a Florida Corporation, Individually, and Ohio Casualty Insurance Company, an Ohio Corporation, As Assignee of Octavio Casado, D/B/a Casado Transport, Inc., Appellants,
v.
John Michael POLAND, an Underwriter at Lloyds, London, On Behalf of Himself and All Those Other Lloyds' Underwriters Subscribing Insurance Policy  Certificate of Insurance Numbered T10927-3647, Appellee.
No. 89-1357.
District Court of Appeal of Florida, Fourth District.
September 5, 1990.
Rehearing and Rehearing Denied December 17, 1990.
Ronald Fitzgerald and Anuraag H. Singhal of Fleming, O'Bryan & Fleming, P.A., Fort Lauderdale, for appellants.
Paul B. Butler, Jr. and Robert Krug of Butler and Burnett, Tampa, for appellee.
Rehearing and Rehearing En Banc Denied December 17, 1990.
PER CURIAM.
Classic Concepts imported 1,200 electrical ceiling fans valued at $63,600 for sale to retail merchants. Ohio Casualty issued Classic a point-to-point transportation inland marine floater policy insuring the cargo while it was being transported from factory to warehouse.
The cargo was off-loaded at the Port of Miami and the freight forwarder, Pronto Cargo Brokers, engaged appellant Octavio Casado, d/b/a Casado Transport, to carry the cargo for resale to Lindsley Lumber. Casado Transport maintained a policy of insurance issued by appellee Poland which provided:
It is the purpose of this insurance to indemnify the insured for their legal liability only to the amount which they are obligated to pay and do pay on such *312 merchandise by reason of losses caused as herein defined. (Emphasis added.)
... .
This cover note shall not be assigned either in whole or in part, without the written consent of the Broker endorsed hereon.
The policy coverage applied to cargo or containers while loaded on any undescribed semi-trailer attached to one of two described covered tractors. Subsequently, Casado's employee Carrasco delivered the trailer to Lindsley's receiving center where he was turned away because the receiving center was closed. Upon instructions from Casado, the employee drove the tractortrailer to his home in Hialeah where it was parked on the street. Between August 31 and September 1, 1983, the trailer and merchandise were stolen. The police report taken at the time of the reported theft indicated that Casado's tractor was not attached to the trailer. Casado notified his underwriters which assigned the matter to Gator Adjusters.
In the meantime, Classic filed a claim with Ohio Casualty for the loss. Ohio Casualty paid Classic $49,750 which resulted in an uninsured loss to Classic of $13,850. Ohio Casualty was subrogated to the insured's right to the extent of such payment against any party legally responsible for the loss.
Gator Adjusters subsequently advised Casado by letter that there was no coverage for the loss as a result of its investigation and conclusion which was based on the police department report.
Ohio Casualty brought a subrogation action against Casado seeking to recover its loss plus alleged uninsured losses of Classic Concepts. Casado reached an agreement with Ohio Casualty and Classic whereby Casado would not be required to pay any damages resulting from legal liability to Classic or Ohio Casualty in an exchange for an assignment of all claims against Poland.
Classic and Ohio Casualty then sued Poland to recover the loss. Appellee moved for judgment on the pleadings and appellant moved for summary judgment. The trial court granted appellee's motion and entered judgment against appellants. We affirm.
Our review of the record and policy issued Casado leads us to conclude that it was an indemnity for loss policy rather than an indemnity for liability policy. As such, appellant could not recover on the covenant until Casado paid or otherwise satisfied the obligation or made good the actual loss which he may suffer. Gaines v. MacArthur, 254 So.2d 8 (Fla. 3d DCA 1971).
It is well settled that if the language found in an insurance policy is not ambiguous or otherwise susceptible of more than one meaning, the court's task is to apply the plain meaning of the words and phrases used to the facts before it. The courts, therefore, are not free to rewrite an insurance policy or add meaning to it that is not really there. Excelsior Insurance Co. v. Pomona Park Bar and Package Store, 369 So.2d 938 (Fla. 1979); S.E. Fire Insurance Co. v. Lehrman, 443 So.2d 408 (Fla. 4th DCA 1984). We hold that the language of the "indemnity for loss" provision is clear and unambiguous. That is, the contract only obligates appellee to indemnify Casado for the loss that he was obligated to pay and actually pays.
Nevertheless, appellants choose to ignore the distinctions between indemnity for liability and indemnity for loss policies and assert that these distinctions are not material to this case. They claim that adding the words "and does pay" should not affect the outcome in a situation involving wrongful denial of coverage. Beyond this, they argue that an additional requirement of actual payment is likewise irrelevant. We disagree.
The parties do not cite nor does our research reveal any Florida cases directly on point. Other courts conclude, however, that where a contract is strictly one of indemnity, that is, one against loss or damages, the indemnitee cannot recover until he has made payment or otherwise suffered actual loss or damage. Roebuck v. *313 Steuart, 76 Md. App. 298, 544 A.2d 808 (Ct.Spec.App. 1988).
Similarly, other courts hold that indemnity against loss is the essence of a contract of insurance and the undertaking is personal to the insured. The policy is not an insurance of the specific thing without regard to the ownership, but is a specific agreement of indemnity with the person, insuring against such loss as he may sustain. Paluszek v. Safeco Insurance Co. of America, 164 Ill. App.3d 511, 115 Ill.Dec. 154, 517 N.E.2d 565 (1987).
Steil v. Fla. Physicians' Insurance Reciprocal, 448 So.2d 589 (Fla. 2d DCA 1984), cited by appellant, is distinguishable. In that case, Steil argued, as does appellant here, that if an insurer wrongfully refuses to defend an insured, the insured is entitled to make a reasonable settlement without requiring the suit to be carried to judgment even though the policy purports to avoid liability for a settlement made without the insurer's consent. However, that case involved a policy of indemnity for liability rather than indemnity for loss where the right of action springs into existence with the accrual of liability. Once the defendant doctor in Steil acknowledged that he was obligated for $35,000 in damages, liability was legally imposed and the insurance carrier could not raise the "no action" defense when it left the doctor to fend for himself. In addition, the insurer refused to defend its insured. Therefore, the insured was entitled to make his own settlement.
In this case, appellee's obligation to indemnify could only arise when two conditions were met. First, Casado had to become obligated to pay. This condition was satisfied under the settlement agreement. Second, Casado had to actually pay the loss. This condition was not met. Furthermore, there was no duty on the part of appellee to defend in this action.
In each and every other case cited by appellant, the insurer did not simply deny coverage but rather it wrongfully refused to defend the insured. Consequently, where an insurer wrongfully refuses to defend a suit or claim, it intentionally removes itself from any settlement and therefore cannot blame its insured for the position it finds itself in. Appellants concede that appellee was not obliged to defend.
Appellee argues forcefully and we agree that the assignment to appellants may be seen as an attempt to circumvent the built-in safeguards of the indemnity for loss policy. By not reserving a right or duty to defend, the insurer leaves the insured the ultimate responsibility of settling or otherwise disposing of a third party's claim. At the same time, the insured is not required to pay higher premiums since the indemnity insurer can still be assured that the insured will make every effort to minimize his own out-of-pocket losses which the insurer will ultimately be required to pay.
Appellant's further reliance on Vigilant Insurance Co. v. Humana of Florida, Inc., 518 So.2d 988 (Fla. 4th DCA), rev. dismissed, 525 So.2d 881 (Fla. 1988), and Taylor v. Safeco, 361 So.2d 743 (Fla. 1st DCA 1978), are again distinguishable since both dealt with indemnity for liability policies and not indemnity for loss policies.
On the other hand, all contractual rights are assignable unless the contract prohibits the assignment, the contract involves obligations of a personal nature or public policy dictates against the assignment. L.V. McClendon Kennels, Inc. v. Investment Corp. of So. Florida, 490 So.2d 1374 (Fla. 3d DCA 1986). Section 627.422, Florida Statutes (1989), provides that an insurer has the option of requiring or not requiring its consent to an assignment. That statute reads in pertinent part that:
A policy may be assignable, or not assignable, as provided by its terms.
That requires that a "no assignment" clause be included in the policy in order to preclude assignments. Maryland Casualty Co. v. Murphy, 342 So.2d 1051 (Fla. 3d DCA), cert. denied, 352 So.2d 173 (Fla. 1977). In the instant case, the policy was clear and unequivocal in its prohibition of assignment without the insurer's permission. Therefore, Casado could not assign the policy. Appellants' supplemental authority *314 and reliance on Aaron v. Allstate Insurance Co., 559 So.2d 275 (Fla. 4th DCA 1990), is inapplicable since that case neither involved an expressed provision of nonassignment or an indemnity for loss policy. Moreover, that case involved not only a duty to defend but a duty to adequately defend an insured. Accordingly, we affirm both points on appeal.
ANSTEAD, GLICKSTEIN and POLEN, JJ., concur.