JEFFREY GRUIDL, as Special Adm'r of the Estate of June H. Gruidl, Deceased, Plaintiff-Appellant, v. MILTON C. SCHELL *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—3373

Opinion filed January 28, 1988.

James H. Canel, Ltd., and Leonard C. Arnold, Ltd., both of Chicago (James H. Canel, of counsel), for appellant.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Richard G. French and Russell P. Veldenz, of counsel), for appellee S. A. Dimicelli.

Pamela L. Gellen, of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee Milton C. Schell.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Jeffrey Gruidl, as special administrator of the estate of June Gruidl, brought a medical malpractice action in the circuit court of Cook County against defendants, Drs. Milton Schell and S. A. Dimicelli. A jury returned a verdict in favor of plaintiff, awarding the estate $312,000. The jury also found, however, that decedent was 40% contributorily negligent. Consequently, the jury reduced its award by 40%, to $187,560.

Plaintiff appeals from the judgment entered on the verdict. He contends: (1) decedent had an absolute right to rely on the advice of her physicians and owed no duty to exercise reasonable care for her own safety; (2) the evidence failed to establish that decedent's contributory negligence proximately caused her injury; (3) the trial judge erred in refusing to instruct the jury on damages for the aggravation of a preexisting condition; (4) the jury's award for disability and disfigurement was palpably inadequate; and (5) the trial judge erred in denying him some of his costs in bringing this action.

We affirm the judgment of the trial court.

BACKGROUND

The trial adduced the following facts. On March 26, 1982, decedent, June Gruidl, visited Dr. Schell, her family physician. She complained of a small lump on the left side of her neck. Dr. Schell could see the lump. He palpated the mass, it was firm and outside of the thyroid gland. Dr. Schell ordered a thyroid scan, a T3/T4 thyroid function test, and a barium swallow. The thyroid function test and barium swallow were normal. The thyroid scan revealed, however, the possible existence of a small nonfunctional nodule or other mass exerting pressure on the left lobe of the thyroid. The right thyroid lobe appeared normal.

Dr. Schell admitted decedent to West Suburban Hospital on March 30, 1982. Plaintiff and defendants disagreed as to what happened af-

ter decedent's admission to the hospital. Plaintiff's evidence at trial was that the mass was still present in her neck and was the size of a quarter or a golf ball. On April 5, 1982, Dr. Dimicelli, a surgeon and throat specialist, examined decedent at the request of Dr. Schell.

Drs. Schell and Dimicelli both examined the mass. Dr. Dimicelli told decedent that she would have surgery the next day. Dr. Schell, however, discharged her after their examination. Dr. Schell wrote in decedent's chart that the mass had subsided and that neither he nor Dr. Dimicelli could palpate it. Dr. Dimicelli entered no findings from his examination in decedent's chart. Neither physician, however, told decedent the reason for her discharge. Dr. Schell wrote that decedent was to see Dr. Dimicelli in two weeks for further examination. Neither physician gave decedent any follow-up instructions.

Defendants' evidence at trial was essentially that the lump in decedent's neck was not pronounced when decedent was admitted to West Suburban Hospital. A nurse and a staff physician examined decedent separately after her admission to the hospital. Each found a small mass on the left side of her neck. The nurse had to search for the lump, which was difficult to feel. The hospital staff member did not consider the mass to be on or in decedent's thyroid. He found no other abnormalities in decedent's neck.

Dr. Schell examined decedent on March 31, 1982, and again on April 1, 2, and 3. During this time, decedent underwent various medical tests, with normal results. Dr. Schell contacted Dr. Dimicelli to perform a biopsy on decedent to definitely determine the presence of malignancy.

Dr. Dimicelli could find no mass in decedent's neck on April 5, 1982. Until he examined her, he was prepared to perform the biopsy the next day. However, after examining decedent with various techniques, he could not find a lump. He invited both Dr. Schell and decedent to locate the mass, which neither could do. Dr. Dimicelli did not have the thyroid scan report showing the possible presence of a mass.

Since he could not locate a mass, Dr. Dimicelli concluded that he could not perform the biopsy. Dr. Schell instructed decedent to see Dr. Dimicelli in two weeks and to see him in four weeks, noting in her chart only the Dimicelli appointment. Dr. Schell instructed decedent also to see either physician immediately if the mass returned.

Plaintiff and defendants agree that decedent saw Dr. Dimicelli on May 10, 1982. Dr. Dimicelli had decedent's thyroid scan report at that time. Dr. Dimicelli noted in decedent's chart that she had a history of having a possible mass in her neck. He still could not find a mass, however, after examining her. Decedent complained of tenderness in

her neck. Dr. Dimicelli did not schedule another appointment, but instructed decedent to return if the tenderness persisted. He never saw her again.

Plaintiff and defendants disagree as to what happened at this point. Plaintiff presented evidence that decedent visited Dr. Schell in the fall of 1982. She complained again of the swelling in her neck. Dr. Schell examined her neck, but did not tell her that anything was wrong. He neither gave decedent any instructions regarding her neck nor scheduled another appointment. Decedent testified, through an evidence deposition, that she subsequently telephoned Dr. Schell several times to complain about her neck. She further testified that Dr. Schell did nothing. Decedent next visited Dr. Schell on May 27, 1983.

Dr. Schell testified, however, that he did not see or speak with decedent from April 5, 1982, the date of her discharge from West Suburban Hospital, to May 27, 1983. His office records and appointment books also reflected this. Decedent complained only of having a cold or diarrhea. Dr. Schell did notice a large, hard mass on the left side of her neck. Decedent told Dr. Schell that the mass had been present for a couple of months. Dr. Schell recommended hospitalization.

Plaintiff and defendants agree as to the remainder of the unfortunate facts. In late May 1983, decedent asked another physician to examine her neck. He admitted her to the University of Illinois Hospital. On June 30, 1983, hospital physicians performed a biopsy of the lump. They determined that the mass was malignant, specifically medullary carcinoma. The physicians could not surgically remove the tumor because it now involved the carotid artery and esophagus.

Decedent thereafter received radiation therapy. The cancer eventually spread to her liver, spine, and lungs. By December 1984, she basically could not care for herself. She died on August 31, 1985.

Decedent brought this malpractice action against defendants prior to her death. After her death, the trial judge granted plaintiff's motion to be named special administrator of her estate. His third amended complaint contained survival counts that sought damages for injuries to decedent and wrongful death counts that sought damages for injuries to decedent's next of kin.

On October 21, 1986, the jury returned a verdict in favor of plaintiff. The jury awarded plaintiff $212,600 on the survival counts and $100,000 on the wrongful death counts, a total of $312,600. The jury also found, however, that decedent was 40% contributorily negligent. The jury, consequently, reduced the award by 40% to $187,560. The trial judge entered judgment on the verdict, awarded plaintiff costs, and denied the post-trial motions of plaintiff and defendants. Plaintiff

subsequently filed an amended bill of costs totalling $13,657.62. The trial judge awarded plaintiff only $987.15. Plaintiff appeals.

OPINION

## I

Plaintiff first challenges the jury's finding that the decedent was 40% contributorily negligent. Plaintiff contends: (a) decedent had an absolute right to rely on the advice of her physicians and owed no duty to exercise reasonable care for her own safety; and (b) the evidence failed to establish that decedent's contributory negligence proximately caused her injury. Plaintiff seeks a judgment *n.o.v.* on that portion of the judgment reducing his award by the percentage of decedent's contributory negligence.

## A

■ Plaintiff first contends that decedent had an absolute right to rely on the advice of Drs. Schell and Dimicelli. Plaintiff points to defendants' diagnosis and treatment of decedent's mass on April 5, 1982, when they discharged her from West Suburban Hospital. Decedent could reasonably infer from defendants' conduct, plaintiff argues, that the mass was not serious and that she need not worry about it. Plaintiff contends that decedent owed no duty to exercise reasonable care for her own safety. Plaintiff correctly notes that the existence of a duty is a question of law for the court to determine. *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 116, 119.

The law imposes a duty on a plaintiff to exercise that care which a reasonably prudent person would take to avoid injury in like circumstances. Contributory negligence is a breach of this duty: the lack of due care for one's own safety. A person may not knowingly expose herself to the danger of injury that she might have avoided by the exercise of ordinary care. (*Magnone v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 170, 180, 466 N.E.2d 1261, 1268.) Further, contributory negligence is a damage-reducing issue and can be raised in medical malpractice cases. *Barenbrugge v. Rich* (1986), 141 Ill. App. 3d 1046, 1053, 490 N.E.2d 1368, 1373.

Plaintiff, however, makes the blanket assertion that "[a] generic obligation [of a plaintiff to exercise reasonable care for her own safety] does not exist between a patient and her physician." Plaintiff bases his assertion on *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869, where our supreme court reasoned that the physician-patient relationship is a fiduciary one, based on the physician's great

knowledge, which the patient lacks. The court held, therefore, that a physician was estopped from asserting the statute of limitations as a bar to his patient's malpractice action where he advised the patient that she had no injury. 85 Ill. 2d at 158-60, 421 N.E.2d at 875-76.

Plaintiff argues that the holding and reasoning of *Witherell* eliminated the doctrine of contributory negligence in medical malpractice actions. Plaintiff's reliance on *Witherell* is misplaced. *Witherell* did not change the long-standing rule that the issue of contributory negligence can be raised in medical malpractice actions; that case did not question the rule or even raise the issue. Declining to depart from well-settled tort law, we hold that decedent had a duty to exercise reasonable care for her own safety.

## B

■ Plaintiff next contends that the evidence failed to establish that decedent's contributory negligence proximately caused her injury. The question of contributory negligence is ordinarily a question of fact for the jury. If there is any evidence of contributory negligence on the part of the plaintiff, a question of fact is presented that must be left to the jury for determination. The standard enunciated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, used to determine the propriety of judgments *n.o.v.*, is also used to determine whether the issue of plaintiff's contributory negligence should be submitted to the jury. (*Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 970-71, 424 N.E.2d 1279, 1285.) The test is whether "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14.

Applying the above principles to the instant case, we conclude that the issue of decedent's contributory negligence was properly before the jury. The record contains evidence that defendants instructed decedent to see them immediately if the lump or tenderness in her neck persisted or grew worse, yet decedent did nothing for approximately one year. Based on this evidence, we further conclude that plaintiff has not met the *Pedrick* standard for a judgment *n.o.v.* We uphold that portion of the judgment reducing plaintiff's award by the percentage of decedent's contributory negligence.

## II

■ Plaintiff next contends that the trial judge erred in refusing to instruct the jury on damages for the aggravation of a pre-existing

condition. Plaintiff proffered an instruction based on Illinois Pattern Jury Instructions, Civil, No. 30.03 (2d ed. 1971) (hereinafter IPI Civil 2d), which provides for the aggravation of a preexisting condition as an element of damages. The trial judge refused to give the instruction, finding that defendants did not aggravate decedent's cancer.

If IPI Civil 2d No. 30.03 is applicable, considering the facts and the prevailing law, it should be given. If, however, no sufficient evidentiary basis exists for that instruction, then it is reversible error to give it. (*Tracy v. Village of Lombard* (1983), 116 Ill. App. 3d 563, 576, 451 N.E.2d 992, 1001.) Plaintiff points to evidence in the record that if defendants had intervened in decedent's cancer sufficiently early, the small mass could have been removed; the tumor would not have grown to be surgically unremovable, due to its size and location.

It is hornbook law that a tortfeasor is liable for the injuries he or she causes, even though the injuries consist of the aggravation of a preexisting condition. (*Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 455, 394 N.E.2d 391, 393.) Further, a plaintiff with a disease may recover damages also for the activation of a dormant disease or the acceleration of a progressive disease. A plaintiff, however, can recover only for that part of his suffering that proximately resulted from the defendant's negligence and was thereby activated, aggravated, or accelerated. (15 Ill. L. & Prac. *Damages* §37 (1968).) "A plaintiff is not entitled to recover damages for conditions which are due entirely to a previous disease." 25 C.J.S. *Damages* §20, at 657 (1966).

Applying the above principles to the instant case, we conclude that the trial judge properly refused plaintiff's instruction on the aggravation of a preexisting condition as an element of damages. It is an unfortunate fact that cancer, by its very nature, is an ever-spreading disease. Neither defendants' prompt diagnosis nor their inaction would have changed this fact. The record contains no evidence that defendants' negligence activated, aggravated, or accelerated the cancer. Since the record contained insufficient evidence for IPI Civil 2d No. 30.03, it was correctly not given. We note that we reached a similar conclusion in *Falkenthal v. Public Building Comm'n* (1982), 111 Ill. App. 3d 703, 708-09, 444 N.E.2d 498, 502-03, involving narcolepsy. We hold that the trial judge properly refused to instruct the jury on the aggravation of a preexisting condition as a separate element of damages.

### III

Plaintiff next contends that the jury's assessment of

$20,000 as disability and disfigurement damages, part of its total ward of $312,000, was palpably inadequate. He asks us to set aside the award and remand the cause for a new trial on this element of damages.

Plaintiff and defendants agree on the applicable legal principles. The issue of damages is particularly a question of fact for the jury and the courts are reluctant to interfere with the jury's exercise of its discretion. Where the trial judge properly instructed the jury on the elements measuring damages and where no showing exists that the size of the verdict resulted from passion or prejudice, a reviewing court will not overturn a jury's damages award unless the amount awarded is palpably inadequate or it is clear that the jury disregarded a proven element of damages. *Lee v. Chastang* (1979), 79 Ill. App. 3d 622, 625, 398 N.E.2d 1250, 1252.

Applying the above principles to the instant case, we decline to disturb the jury's assessment of plaintiff's disability and disfigurement damages. We previously held that the trial judge properly refused to instruct the jury on the aggravation of a preexisting condition as an element of damages. Plaintiff does not argue that the jury's instructions were improper in any other respect.

Plaintiff does argue, however, that the jury's award of $20,000 was palpably inadequate. We will not unduly lengthen this opinion with a detailed recitation of decedent's symptoms. Suffice it to say that decedent's illness was increasingly painful and debilitating. Awarding a small amount of damages is not the same as disregarding proven elements of damages and it has never been a reason for reversal as such. Further, an award of damages is not palpably inadequate just because it was less than generous. (79 Ill. App. 3d at 625, 398 N.E.2d at 1252-53, relying on *Brown v. St. John's Hospital of The Hospital Sisters of The Third Order of St. Francis* (1977), 51 Ill. App. 3d 1044, 1045-46, 367 N.E.2d 155, 156.) We uphold the jury's damages award for disability and disfigurement.

## IV

■■ Plaintiff lastly contends that the trial judge erred in denying him some of his costs in bringing this action. Plaintiff filed an amended bill of costs totalling $13,657.62. The trial judge awarded plaintiff only $987.15. Plaintiff asks us to tax as costs those expenses that the trial judge rejected.

The common law did not allow a successful litigant to recover from his opponent the expenses of the litigation. The allowance and recovery of costs is, therefore, entirely dependent on statutory autho-

rization. Only those items allowed by statute can be taxed as costs. While the power to impose costs must ultimately be found in some statute, the legislature may grant the power in general terms to the courts, which in turn may make rules or orders under which costs may be imposed. (*Galowich v. Beech Aircraft Corp.* (1982), 92 Ill. 2d 157, 162, 441 N.E.2d 318, 320.) A corollary of these principles is that any statute allowing the recovery of costs must be strictly construed. *Third Establishment, Inc. v. 1931 North Park Apartments* (1981), 93 Ill. App. 3d 234, 243, 417 N.E.2d 167, 174.

Plaintiff, however, relies on section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611) in arguing that "[w]ith the adoption of [section 2—611], it appears that the legislature has adopted a policy that affords the court the discretion to award costs under appropriate circumstances."

Plaintiff is in error. Section 2—611 allows the taxing of costs and attorney's fees against a party pleading untrue statements. This section is penal in nature. Thus, it may be invoked only in cases falling strictly within its terms, specifically, "[a]llegations and denials, made without reasonable cause and found to be untrue." (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) A party must prove each of these elements. (*Establishment, Inc.*, 93 Ill. App. 3d at 243, 417 N.E.2d at 174.) Plaintiff does not argue that defendants pled any untrue statements; thus, he may not invoke section 2—611. After closely reviewing the record, we uphold the trial judge's grant of some of plaintiff's costs, totalling $987.15.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.