BANK OF ILLINOIS, as Guardian of the Estate of Nicholas Karr, a Minor, Plaintiff-Appellant, v. ALICE THWEATT, Ex'r of the Estate of Bradley D. Adams, Deceased, Defendant-Appellee.

Fourth District    No. 4—93—0334

Argued November 9, 1993.—Opinion filed February 18, 1994.—Rehearing denied April 5, 1994.

Joseph W. Phebus (argued) and Thorpe Facer, both of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellant.

Todd M. Tennant and Renee L. Monfort (argued), both of Dobbins, Fraker, Tennant, Joy & Perlstein, P.C., of Champaign, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On March 23, 1989, Deanne and Stephen Karr, as parents and next friends of Nicholas Karr, brought a medical malpractice action against Dr. Bradley Adams, seeking money damages for Nicholas' injuries. Dr. Adams died on May 24, 1989, and Alice Thweatt, executor of his estate, was substituted as defendant. Bank of Illinois was also substituted as plaintiff when it was appointed guardian of Nicholas' estate. On February 20, 1993, the jury returned a verdict in

favor of defendant, and the trial court subsequently entered a judgment on the jury's verdict. The court thereafter denied plaintiff's post-trial motion for a new trial, and plaintiff appeals. We affirm.

This suit arises out of medical care provided by Dr. Adams to Deanne in 1983 when she was pregnant with twin boys, Nicholas and Joshua Karr. Deanne learned she was pregnant in December 1982, and upon the recommendation of friends, contacted Dr. Adams at Christie Clinic, Champaign, Illinois, to be her obstetrician-gynecologist. She was first examined by Dr. Adams on December 8, 1982, and she thereafter began regular monthly prenatal appointments with him. On March 18, 1982, Deanne began running a temperature and vomiting. She was admitted to Mercy Hospital on March 23, 1983, and was diagnosed with a kidney infection. It was also determined she was anemic. She remained at the hospital for five days, during which time a sonogram was performed which revealed she was carrying twins.

On the evening of April 22, 1983, Deanne engaged in sexual intercourse with her husband, whereupon she started bleeding. Stephen called the hospital and was instructed to call Dr. Adams. He called Dr. Adams' service, and Dr. Adams returned the call shortly thereafter. Deanne informed Dr. Adams that she had previously engaged in sexual intercourse and was bleeding. Deanne testified she described the bleeding as being "heavier than the heaviest day of [her] period." She also testified Dr. Adams inquired whether she was having contractions, and she responded she did not know what they felt like, but that she was experiencing a rolling sensation beginning below her navel and moving up below her breasts. Dr. Adams asked if there was any kind of regularity to the "rolling sensation." She indicated that they had just begun, and she was not paying any attention because she was worried about the bleeding. Dr. Adams informed her that bleeding occurs many times after sexual intercourse and that the "wavelike" sensations were Braxton-Hicks contractions, which were nothing to worry about. Deanne testified he instructed her to go back to bed. During the course of the night, the bleeding abated and eventually stopped between 6 and 7 a.m. the next morning.

Deanne phoned Dr. Adams the next day and informed him that the bleeding had stopped. She also told him that the "wave-like" sensations had continued, but they were not in any set pattern. She stated she was assured that they were nothing to worry about. She indicated that her next scheduled appointment was April 28, 1983, and she stated that he told her she should be sure and keep the appointment. She asked if he should see her earlier, and she testified that he said it would not be necessary.

At her appointment on April 28, 1983, Dr. Adams examined her and determined her cervix was three centimeters dilated and 80% to 90% effaced. She was thereafter admitted to Mercy Hospital. Dr. Adams initially ordered bed rest, diet as tolerated and prenatal vitamins. At approximately 2:45 p.m., an IV was started containing ritodrine, a tocolytic medication given to arrest preterm labor contractions. The next day Deanne was transferred to St. Francis Hospital in Peoria, Illinois, because Champaign did not have a neonatologist. Upon arriving at St. Francis, an additional drug was administered, betamethasone, a steroid which is given to promote lung maturity in fetuses. For a period of time the ritodrine appeared to arrest the contractions. However, the contractions later began again and an emergency Cesarean section was performed on April 29, 1993. Due to complications arising from his preterm delivery, Joshua died a week later. Nicholas weighed 765 grams at birth and, during the course of hospitalization, was diagnosed with various medical conditions. To date, he suffers serious permanent health problems associated with his preterm delivery. The twins were delivered at 26 weeks gestational age or approximately 14 weeks early.

On March 23, 1989, Deanne and Stephen Karr, as parents of Nicholas Karr, and as special administrator for the estate of Joshua Karr, filed a three-count complaint against Dr. Adams. Count I was a negligence action against defendant, alleging that in December 1982 Deanne entered into the care of Dr. Adams for obstetrical care for her pregnancy, and remained in his care until the delivery of her twin boys, Nicholas and Joshua. In rendering obstetrical and gynecological care, the complaint alleged defendant committed several negligent acts or omissions, including the failure to (1) examine Deanne immediately after he was informed of vaginal bleeding and spasms on April 22, 1983; (2) diagnose Deanne's premature labor; (3) effectively treat Deanne's premature labor; (4) monitor Deanne's physical condition so as to reduce the possibility of premature labor and birth; and (5) take effective and standard precautions against premature birth.

The complaint was later amended to include the following additional allegations of negligence: the failure to (1) conduct a cervical and a fetal heart monitor examination after receiving Deanne's complaint of bleeding no later than April 23, 1983, which examination would in all likelihood have disclosed premature labor,

and upon such disclosure should have immediately instituted tocolysis; (2) immediately institute tocolysis and arrange for a transfer to a tertiary care unit after ascertaining Deanne was in labor; and (3) timely institute tocolysis. As a result of these acts, the complaint alleged Nicholas was prematurely delivered, resulting in multiple birth defects.

Count II was a wrongful death action brought on behalf of Joshua, and count III was an action for family expenses. Upon motion, counts II and III were severed, and the trial proceeded solely on count I.

As stated, the jury found for defendant and against plaintiff and the court entered judgment on the verdict. Plaintiff filed a motion for new trial alleging various trial errors, which the court denied. The court, however, made a finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), stating that there was no just reason to delay enforcement or appeal of the order. This appeal followed.

Paragraph 5 of count I of the original complaint contained the allegations of damages and alleged:

"5. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Nicholas Karr was prematurely delivered in an undeveloped and vulnerable state *resulting in multiple severe birth defects and disabilities* which condition required protracted neonatal care and as a result of which he will be severely and permanently disabled and has incurred and will require for his entire life extensive medical and custodial care." (Emphasis added.)

On December 23, 1991, plaintiff filed a motion to amend its complaint, including paragraph 5 of count I. The amendment was as follows:

"5. That as a direct and proximate result of one or more or a combination of the foregoing negligent acts or omissions, Nicholas Karr was born prematurely and as a result of the premature birth did suffer multiple injuries and disabilities, as a result of which he has suffered great pain and anguish, both in mind and in body, and will so suffer permanently in the future, and was rendered permanently disabled, and has incurred and will incur in the future substantial sums for medical care in attempting to alleviate his injuries and to preserve his life, and is so disabled and impaired that he is permanently unemployable, is substantially impaired in his ability to enjoy life[,] and will require special life care expenses for special life care needs and therapy for his life, all to his damages."

The motion was allowed, and defendant answered plaintiff's amended paragraph 5 of count I.

On February 18, 1993, during the trial, plaintiff moved to again amend paragraph 5 of the complaint by inserting the words, "*or alternatively with more* severe birth defects and disabilities" (emphasis added), after the phrase "severe birth defects and disabilities" in the *original* complaint, not the amended complaint.

Plaintiff failed to acknowledge in its motion, as well as in its argument to the trial court to allow its motion and its appellate brief, that there was a prior amendment to paragraph 5 which was granted. Nevertheless, plaintiff's motion was denied because the trial court concluded there was no evidence presented to support the phrase "with more severe birth defects and disabilities." Plaintiff appeals, arguing, *inter alia*, that it is entitled to a new trial because the trial court erred in denying its motion to amend to conform with the proof.

Section 2—616 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—616) allows amendments to be made to pleadings. Subsection (c) of section 2—616 provides "[a] pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." (Ill. Rev. Stat. 1991, ch. 110, par. 2—616(c).) The statute permitting amendment of pleadings is to be liberally construed to allow cases to be decided on the merits rather than on technicalities. (*Delzell v. Moore* (1992), 224 Ill. App. 3d 808, 812, 587 N.E.2d 1131, 1134.) Whether a pleading may be amended pursuant to this statute is a matter committed to the sound discretion of the trial court. *Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211, 1216; *Timm v. Indian Springs Recreation Association* (1992), 226 Ill. App. 3d 760, 770, 589 N.E.2d 988, 995.

■ We find the trial court's denial of plaintiff's motion to amend was not an abuse of discretion. The December 23, 1991, amendment adequately advised the jury of the allegations of negligence. Additionally, plaintiff does not cite to any evidence in the record to support its assertion that the proposed amendment would conform to the proof presented. It is noted further that the amendment proposed concerned damages and not negligence.

■ Over plaintiff's objection, the court allowed defendant's proffered instruction No. 13 to be given to the jury. This instruction consisted of Illinois Pattern Jury Instructions, Civil, No. 30.01 (2d ed.

1971) (hereinafter IPI Civil 2d), complete with damage elements from IPI Civil 2d Nos. 30.04, 30.05, 30.06, 30.07, and 30.09.

Plaintiff objected to the instruction being given on the basis that it did not provide for an award of damages for the worsening of a condition. Plaintiff proffered various other instructions which provided for compensation for the aggravation of a preexisting condition as an element of damages. The trial judge refused to give the instructions, finding they were not supported by the evidence. On appeal, plaintiff again argues defendant's instruction No. 13 should not have been given or in the alternative should have been supplemented with a combination of various instructions tendered by plaintiff. Plaintiff claims the tendered damages instruction failed to instruct the jury that it could recover for any worsening or aggravation of a condition where the underlying condition would have occurred in absence of any negligence on the part of defendant. By not allowing its tendered instructions, plaintiff argues that the trial court committed reversible error, and it is entitled to a new trial.

Before the jury reaches the question of damages, it must first decide liability. In the present case, the jury returned a verdict in favor of defendant, thereby finding him not guilty on the question of liability. Since it did not reach the damages issue, there would have been no occasion for the jury to have considered defendant's tendered instruction No. 13. Because the jury did not reach the damages issue, the fact the court did not allow an instruction for the compensation for the aggravation or worsening of a condition is not pertinent to the appeal. This position is further bolstered by plaintiff's statement in its reply brief, "plaintiff's position is not that proximate cause was improperly addressed, rather its position is that the damage instruction as given was erroneous."

The trial court appropriately instructed the jury, and plaintiff's instructions should have been refused because they were not supported by the evidence. Each party is entitled to instructions on matters supported by the evidence. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 485, 473 N.E.2d 1322, 1342.) However, where there is no evidence to support an instruction, the trial court's refusal to instruct on that issue is proper. *Tucker v. Illinois Power Co.* (1992), 232 Ill. App. 3d 15, 34, 597 N.E.2d 220, 233; *Henderson v. Illinois Central Gulf R.R. Co.* (1983), 114 Ill. App. 3d 754, 760, 449 N.E.2d 942, 946.

The record contains no evidence that defendant's alleged negligence activated, aggravated or accelerated a preexisting

condition. Rather, the evidence showed plaintiff went into preterm labor and due to preterm complications Nicholas suffers from various medical conditions. Plaintiff presented testimony that had defendant examined plaintiff after she called him he would have discovered she was in preterm labor, and he could have begun administering tocolytic drugs to abate the contractions. However, this evidence does not support instructions concerning the aggravation or worsening of a particular condition. The exact nature of the preexisting conditions, as well as how and to what extent defendant's negligence worsened them, is not in evidence. The court properly refused to instruct the jury that plaintiff could be compensated for the worsening or aggravation of a preexisting condition, as well as other instructions regarding the aggravation or worsening of a condition. See *Gruidl v. Schell* (1988), 166 Ill. App. 3d 276, 282, 519 N.E.2d 963, 968; *Falkenthal v. Public Building Comm'n* (1982), 111 Ill. App. 3d 703, 708-09, 444 N.E.2d 498, 502-03.

■ Plaintiff next argues that the trial court erred in allowing Dr. Lawson to testify regarding Nicholas' condition had the pregnancy been prolonged because it exceeded the scope of his Supreme Court Rule 220 (134 Ill. 2d R. 220) disclosure. It also argues the court improperly prohibited Dr. Dattel from testifying regarding a similar subject.

Pursuant to the rule, courts have held that an expert's direct testimony at trial may not be inconsistent with, nor go beyond the fair scope of, the facts known or the opinions disclosed during discovery. (*Zajac v. St. Mary of Nazareth Hospital Center* (1991), 212 Ill. App. 3d 779, 794, 571 N.E.2d 840, 849.) The purpose of this rule is to permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries, and it limits the permissible scope of an expert's testimony to those opinions expressed in response to discovery. (*Stringham v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 312, 322, 536 N.E.2d 1292, 1298; *Zajac*, 212 Ill. App. 3d at 794, 571 N.E.2d at 850.) Rule 220 also promotes the timely and good-faith pretrial disclosure of expert witnesses, to prevent surprise and to facilitate pretrial investigation of credentials of the experts, and preparation of cross-examination as well as the substance of the testimony of the opposing party's own expert. *Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 60, 573 N.E.2d 279, 286-87; *Dixson v. University of Chicago Hospitals & Clinics* (1989), 190 Ill. App. 3d 369, 378, 546 N.E.2d 774, 780.

During the course of direct examination of Dr. Lawson at trial, plaintiff objected to defendant eliciting from Dr. Lawson testimony regarding Nicholas' condition had the pregnancy been prolonged.

Plaintiff argues such testimony was beyond the scope of the Rule 220 disclosure. The court overruled the objection and held that the proposed testimony did not exceed the opinion disclosed in the interrogatory answer or his deposition testimony. The court limited its rulings to opinions on causation which adhered to the representations made.

The record indicates that defendant disclosed Dr. Lawson as an expert witness in his supplement response to plaintiff's interrogatory No. 21, pursuant to Rule 220. In regard to Dr. Lawson, the response asserted:

"A. Dr. Lawson is expected to testify regarding the subject matter of the causation of the conditions of ill-being sustained by Nicholas Karr and to the conditions of ill-being and death of Joshua Karr. He is also expected to testify regarding the subject matter of the effectiveness and/or ineffectiveness of Betamethasone and tocolytic agents, specifically, the use of the drug Ritodrine.

B. Dr. Lawson is of the opinion that Dr. Adams appropriately initiated the administration of Ritodrine in a timely fashion. He is of the opinion that the same outcome would have resulted, even if Dr. Adams had initiated the administration of the Ritodrine prior to the time he did. Dr. Lawson has concluded and it is his opinion that the premature birth of the twins is the cause of the conditions of ill-being sustained by Nicholas Karr and the cause of the conditions of ill-being and death of Joshua Karr. He bases his opinions and conclusions on the medical records that he has reviewed in the case, the deposition testimony that he has reviewed in this case, his experience as a neonatologist, including his medical education, training, research, reading and interpretation of the medical literature, and his work with obstetricians and other neonatologists."

Attached to the response was correspondence, dated July 23, 1992, from Dr. Lawson to defendant's attorneys which stated: "I understand you will send relevant records of twins delivered prematurely at about 26 weeks gestation in 1983. *You have asked me to be an expert witness regarding survivability and outcome of twins born at this gestation and at later gestations.*" (Emphasis added.) Moreover, there was a letter to Dr. Lawson from defendant's attorneys, dated July 28, 1992, which identified the documents the attorneys wanted Dr. Lawson to review and stated:

"Once you have had an opportunity to review these materials, I would appreciate it if you would give either Todd Tennant, the attorney in our office handling this case, or me a call to discuss your opinions. Specifically, we would like to know in your experi-

ence would earlier tocolysis have made a difference in the outcome back in 1983? Assuming Dr. Dattel's opinion that early tocolysis would have prolonged the pregnancy two weeks, *would it be your opinion to a reasonable degree of medical certainty that it is more probably true than not that the morbidity and mortality in this case would have been substantially the same?*" (Emphasis added.)

In the instant case, the trial court correctly ruled that the intended solicited opinion from Dr. Lawson did not exceed the scope of its Rule 220 disclosure. The disclosure specifically states that Dr. Lawson was expected to testify regarding the cause of Nicholas' condition. The intended testimony falls within this disclosure. Based on the response and the correspondence, plaintiff can hardly claim surprise at his testimony.

■ During Dr. Dattel's evidence deposition, she testified regarding "intact survival," which refers to the amount of morbidity that is suffered by fetuses delivered at varying gestational ages. The defendant interposed a Rule 220 objection, arguing the testimony went beyond the scope of the Rule 220 disclosure. The court sustained the objection.

Plaintiff disclosed Dr. Dattel as an expert witness in its supplemental Rule 220 interrogatory answer. Plaintiff disclosed that Dr. Dattel had reviewed the medical records and discovery depositions of the parties and, based thereon, concluded that Dr. Adams was negligent in failing to meet the standards of care, in that:

"A. Mrs. Karr should have been immediately seen on the evening of April 22 if she described the wave-like sensation referred to in her deposition or described heavy bleeding.

B. If she described any spotting or bleeding whatsoever on the evening of April 22 and described no other symptoms and did not describe heavy bleeding, then she should have been seen no later than April 23.

C. When seen on April 22 or April 23 as referred to above, she should have had a cervical examination and been placed on a monitor. One or the other in all likelihood would have disclosed premature labor. Upon disclosure of premature labor on April 22 or April 23, tocolysis should have been started, which would have had a good probability of success.

D. When she was seen on April 28, Dr. Adams should have immediately instituted tocolysis and arranged for a transfer to a tertiary care unit.

E. Investigation continues as to whether Dr. Adams was negligent concerning medication given for a bladder infection during an[d] after hospitalization of March 23, 1983.

F. Dr. Adams should have obtained a consultation based on an apparent lack of growth of twins based on fundal height."

Dr. Dattel was disclosed as an expert witness concerning negligence. While the disclosure indicates that it was her opinion if tocolysis had been commenced sooner the preterm labor would have been prevented, it is beyond the scope of this disclosure for her to testify regarding morbidity at different gestational ages. Therefore, the trial court did not abuse its discretion in striking her testimony as it was beyond the scope of the Rule 220 disclosure. Moreover, we note that the issues with respect to Dr. Dattel's testimony and that of Dr. Lawson are entirely different.

■ Plaintiff next argues that he attempted to introduce as admissions five specific parts of Dr. Adams' deposition. On appeal, plaintiff alleges that the court erred in requiring it, as a condition of introducing these admissions into evidence, to introduce additional portions of Dr. Adams' deposition as explanation for the proposed admissions. Plaintiff argues these portions do not explain or modify the statements originally intended to be introduced, and therefore the court erred in requiring it to do so.

Initially, the proceedings in which the first four admissions were discussed and the trial court's rulings on each are not contained in the record. Plaintiff's original brief contains no citation to the record regarding these proceedings. In its reply brief, however, it denies that these proceedings are not contained in the record on appeal and lists cites to the record. However, these cites relate to (1) the proceedings surrounding the fifth admission, (2) plaintiff's notice of intent to introduce excerpts of Dr. Adams' discovery deposition, and (3) his post-trial motion.

Supreme Court Rule 323(a) provides that "[t]he report of proceedings *shall include all the evidence pertinent to the issues on appeal.*" (Emphasis added.) (134 Ill. 2d R. 323(a).) A properly authenticated report of proceedings is essential to the presentation of a record of sufficient completeness to permit a challenge to the evidence on the issues raised at trial. (*W.E. Mundy Landscaping & Garden Center, Inc. v. Hish* (1989), 187 Ill. App. 3d 164, 166, 543 N.E.2d 320, 322.) An appellant has the duty to present a complete record on appeal of the trial proceedings to support a claim of error, and in the absence of such a record, it will be presumed that the trial court's judgment conformed to the law and had a sufficient factual basis. *Salazar v. Wiley Sanders Trucking Co.* (1991), 216 Ill. App. 3d 863, 868, 576 N.E.2d 552, 555; *Leary v. Eng* (1991), 214 Ill. App. 3d 279, 283, 573 N.E.2d 352, 355.

Without the record of these proceedings, it is impossible to determine exactly what additional portions the trial court required to be introduced and what the trial court's basis for such a ruling

was. Based on the above standards, the trial court's ruling on the first four admissions is presumed to be appropriate.

Moreover, defendant argues plaintiff has waived any error regarding the court's ruling on all the admissions. Plaintiff sought to introduce the five separate admissions from Dr. Adams' discovery deposition. In response, defendant requested that other parts of the disposition be introduced as well. The trial court agreed with defendant. Following the trial court's ruling, the plaintiff did not offer the admissions into evidence.

The situation in the present case is analogous to *People v. Chatmon* (1992), 236 Ill. App. 3d 913, 932, 604 N.E.2d 399, 413, where the State presented a motion *in limine* before trial to exclude the evidence deposition of a doctor's testimony. The court ruled defendant had a right to have the doctor's testimony heard but excluded portions of the testimony. After the ruling was made, defendant failed to present any portion of the doctor's testimony into evidence at trial, and the court ruled that since it was not preserved the court would be speculating about the harm flowing from the exclusion of portions of the testimony. Thus, the issue was deemed waived.

The underlying theory of *Chatmon* is equally applicable in a civil proceeding. Plaintiff did not introduce into evidence the admissions of Dr. Adams, and any prejudice resulting from the trial court's ruling would be merely speculative. Plaintiff has waived this issue.

Even if plaintiff had properly preserved the issue for appeal, the court properly exercised its discretion in determining what in fairness should be introduced in conjunction with the fifth admission.

Supreme Court Rule 212(c) provides that "[i]f only a part of a deposition is read or used at the trial by a party, any other party may at that time read or use or require him to read any other part of the deposition which ought in fairness to be considered in connection with the part read or used." (134 Ill. 2d R. 212(c).) Thus, the privilege to require additional portions of a deposition to be read is conditioned on the fairness test. This standard reflects the purpose of the rule, which is to prevent distortion that might occur when a party introduces isolated statements from a deposition into evidence. Before a party can force another to read additional portions of a deposition, the trial court must first conclude the additional statements are necessary to either explain or modify the statements introduced by the other party. See *Tarshes v. Lake Shore Harley Davidson* (1988), 171 Ill. App. 3d 143, 152, 524 N.E.2d 1136, 1142.

With respect to the fifth admission, plaintiff sought to introduce the following testimony from Dr. Adams' deposition:

"Q. When was your next discussion with her?

> A. In any depth? Is that the 28th, yeah, the 28th we saw her in the office. Subsequent to that, she called one weekend prior to that about the bleeding."

The trial court allowed this testimony to be introduced as an admission, but ruled that, in fairness, and for clarification purposes, additional testimony could be introduced. We find the portion of the deposition testimony which defendant sought to have read in addition to the admission, and which the court subsequently approved, explains the excerpt plaintiff wanted admitted. Therefore, the fairness standard contained in Supreme Court Rule 212(c) required the additional statements to be introduced, and no error occurred. Additionally, our application of *Chatmon* to the first four admissions would apply to the fifth admission.

■ Plaintiff also argues certain evidence was improperly admitted or excluded. Plaintiff cites just one case for its contentions and that case was merely cited for the proposition that on review the proper inquiry is whether the trial court abused its discretion in ruling on evidentiary matters resulting in prejudice. Additionally, plaintiff failed to argue how the court's rulings on these issues prejudiced it.

Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) provides that an appellate brief must contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The well-established rule is that mere contentions, without argument or citation of authority, do not merit consideration on appeal. (*People v. Hood* (1991), 210 Ill. App. 3d 743, 746, 569 N.E.2d 228, 230.) Contentions supported by some argument but by absolutely no authority do not meet the requirements of Rule 341(e)(7). (*Hood*, 210 Ill. App. 3d at 746, 569 N.E.2d at 230; *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 884, 572 N.E.2d 1219, 1226; *In re Tally* (1991), 215 Ill. App. 3d 385, 390-91, 574 N.E.2d 1262, 1265.) A reviewing court is entitled to have issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research. *Hood*, 210 Ill. App. 3d at 746, 569 N.E.2d at 230.

Plaintiff has failed to comply with the rules governing briefs, and this argument is considered waived.

■ Plaintiff also contends Dr. Powers, Dr. Gibson, and Dr. Swingler, as treating physicians for Deanne and Nicholas, were subject to the disclosure requirements of Rule 220 because they were called as witnesses by defendant and their testimony exceeded the scope of their involvement as treating physicians by rendering opinions as to what would have occurred had something been done differently and what constituted the appropriate standard of care.

Initially, it should be noted that plaintiff failed to make any argument based on Rule 220 in the post-trial motion. It did allege that the trial court erred in excluding certain testimony offered by plaintiff and in overruling its objections to certain testimony offered by defendant, but it made no specific argument based on Rule 220. The failure to raise a point in a post-trial motion acts as a waiver to the issue on appeal. (*People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742, 744; *Crawford County State Bank v. Grady* (1987), 161 Ill. App. 3d 332, 339, 514 N.E.2d 532, 537.) Additionally, specificity in a post-trial motion is required to preserve issues for review. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 189, 417 N.E.2d 1322, 1324; *Crawford*, 161 Ill. App. 3d at 339-40, 514 N.E.2d at 537.) Consequently, plaintiff has waived this issue.

Moreover, even if the issue was not waived, it is meritless. Recently, in *Boatmen's National Bank v. Martin* (1993), 155 Ill. 2d 305, 614 N.E.2d 1194, the supreme court discussed the question of whether a treating physician must be disclosed as an expert witness under Rule 220. In doing so, it analyzed its previous rulings regarding the issue in *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525, and *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543, 610 N.E.2d 77.

After reviewing these cases, we find that they do not support plaintiff's arguments. The philosophy of the supreme court in allowing a plaintiff to call a treating physician without disclosing him as an expert applies equally to a defendant. We find no reason to treat a defendant differently than a plaintiff in regard to calling a plaintiff's treating physician to testify. Moreover, under *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952 (defense counsel may communicate with a plaintiff's treating physician only by means of a format discovery as outlined in Supreme Court Rule 201 (134 Ill. 2d R. 201)), and the cases following it, the defendant would be placed in a difficult position insofar as plaintiff's physicians are concerned if plaintiff's argument is accepted.

We also reject plaintiff's argument the three doctors' testimony exceeded their involvement with the case. The record shows Dr. Powers, a neonatologist, treated Nicholas at St. Francis. The testimony that plaintiff objects to as being outside the scope of his treatment of Nicholas relates to the high risk in twin pregnancies, adverse conditions associated with premature delivery and twin pregnancies, and information relating to births and outcomes. Dr. Gibson, an obstetrician and gynecologist, treated Deanne at St. Francis. He first saw her as she was being prepared for her Cesarean section. Plaintiff objects to his testimony regarding whether placing

Deanne on tocolytic agent such as ritodrine prior to labor would have prevented preterm labor. Likewise, Dr. Swingler, an obstetrician and gynecologist, treated Deanne during her time at St. Francis. The testimony plaintiff objects to regarding his testimony involves his statements (1) that plaintiff should have showed a much better reconstitution of hemoglobin after she had taken iron, (2) the effect of betamethasone, (3) the phase of labor Deanne was in a week earlier, and (4) the success in preventing premature twin births.

Each of these physicians treated either Nicholas or Deanne at St. Francis Hospital and was therefore intimately involved with their conditions. Based upon the extent of their involvement and treatment, this is not a case where they would not have been expected to form opinions as to the cause of their conditions and appropriateness of previous treatment. (*Boatmen's*, 155 Ill. 2d at 324-25, 614 N.E.2d at 1203.) Moreover, plaintiff should not have been surprised by their testimony nor were these opinions formed in anticipation of trial.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

KNECHT and LUND, JJ., concur.